UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BOUNLAY SIACKASORN,

Petitioner,

v.

BRUCE SCOTT, *et al.*,

Respondents.

CASE NO. 2:26-cv-02607-GJL

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Bounlay Siackasorn ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. Presently before the Court is Petitioner's Amended Petition for writ of habeas corpus under 28 U.S.C. § 2241 (Dkt. 14), and his Motions for a preliminary injunction (Dkt. 15) and for a temporary restraining order (Dkt. 24).[1] The Amended Petition has been fully briefed. Dkts. 14, 17, 20.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Amended Petition (Dkt. 14) **IN PART** and **ORDERS** Petitioner's

[1] The parties have consented to proceed in this matter before a United States Magistrate Judge. *See* Dkt. 12.

immediate release. The Motion for Preliminary Injunction (Dkt. 15) and Motion for Temporary Restraining Order (Dkt. 24) are **DENIED as moot**.

## I. BACKGROUND

The parties are familiar with the facts and allegations underlying this Amended Petition, and the Court summarizes them here only in brief.[2] Petitioner is a 49-year-old Laotian refugee who entered the United States as a three-year old child in 1980 and shortly thereafter was admitted as a Lawful Permanent Resident. Dkt. 14 at 2. Petitioner has remained in the United States since his entry in 1980. *Id*.

On August 8, 2007, an Immigration Judge ("IJ") in Eloy, Arizona, ordered Petitioner removed to Laos due to his February 2007 conviction for possession with intent to sell methamphetamine in a California state court. Dkt. 14 at 7; Dkt. 18-1, Ex. B (IJ Order). That order of removal became final on August 8, 2007, as Petitioner waived his right to appeal. Dkt. 14 at 7; Dkt. 18-1, Ex. B.

Petitioner remained in ICE custody after the IJ's Order until November 5, 2007. Dkt. 14 at 7. On that date, Petitioner was released on an Order of Supervision ("OSUP"), after ICE's Office of Enforcement and Removal Operations ("ERO") determined Petitioner's removal to Laos was not reasonably foreseeable. *Id*. at 7–8. At that time, Petitioner had been in ICE custody for approximately three (3) months. *See* Dkt. 19 ¶ 9 (Subero Decl.).

For over fourteen (14) years, Petitioner complied with the OSUP and checked in annually with immigration officials in Portland, Oregon, where he has lived since 2001. Dkt. 14 at 8–9.

---

[2] The facts are fully set forth in the Court's Order addressing Petitioner's previously filed habeas Petition at *Siackasorn v. Mullin*, No. 2:26-cv-01485-GJL, 2026 WL 1745835 (W.D. Wash. June 17, 2026).

On February 2, 2026, Headquarters for Removals and International Operations ("HQ RIO") received a travel document for Petitioner from the government of Laos, which Respondents assert was valid for ninety (90) days from January 30, 2026. Dkt. 19 ¶ 14; *see* Dkt. 2-4, Ex. D. (travel document). In this travel document, however, Petitioner's name was incorrectly spelled and contained a different date of birth. Dkt. 19 ¶ 14; Dkt. 2-4, Ex. D.

On April 20, 2026, ICE re-detained Petitioner. Dkt. 19 ¶ 16. ERO served Petitioner with a Notice of Revocation of Release and a Notice of Imminent Removal, indicating Petitioner's release had been revoked because ICE had a travel document from Laos and had scheduled his removal to occur before April 30, 2026. Dkt. 2-6, Ex. F; Dkt. 19 ¶ 16. On that same date, Petitioner was transferred to NWIPC where he remains detained. Dkt. 19 ¶ 16.

On May 1, 2026, Petitioner filed his first habeas Petition in this Court. *Siackasorn v. Mullin*, No. 2:26-cv-01485-GJL (W.D. Wash) (Dkt. 1). He also filed a Motion for Temporary Restraining Order, to prohibit his removal while the litigation was pending, which the Court granted. *Id*. (Dkts. 2, 3).

On May 11, 2026, Petitioner moved before the Eloy Immigration Court to stay his removal and reopen his removal proceedings. Dkt. 19 ¶ 18. Also on May 11, 2026, HQ RIO obtained a new travel document from Laos for Petitioner, but the document contained the same errors as the previous travel document. *Id*. ¶ 19. Even so, ERO added Petitioner to a charter for June 2026 and planned to remove Petitioner pending the outcomes of his first habeas Petition and motions filed with the Eloy Immigration Court. *Id*. ¶ 20.

Soon after Petitioner tendered his filings in the Eloy Immigration Court, on May 19, 2026, the state court in California vacated Petitioner's 2007 conviction that had served as the

predicate for the IJ's August 8, 2007, order of removal. Dkt. 14 at 7; *see* Dkt. 2-3, Ex. C; Dkt. 18-3 at 4, Ex. C.

On June 1, 2026,[3] Petitioner filed an amended motion to reopen his removal proceedings in the Eloy Immigration Court. Dkt. 2-2, Ex. B. On June 23, 2026, the IJ at the Eloy Immigration Court granted Petitioner's May 11, 2026, request for a stay of removal pending the determination of Petitioner's motion to reopen his removal proceedings. Dkt. 19 ¶ 24.

On July 15, 2026, the Eloy IJ denied Petitioner's motion to reopen his removal proceedings. Dkt. 19 ¶ 25; Dkt. 18-3, Ex. C. Petitioner has appealed the decision to the Board of Immigration Appeals ("BIA"), where it is currently pending.[4] Dkt. 20 at 2–3; Dkt. 21 (Pasquarella Dec.).

On July 23, 2026, Petitioner filed the instant habeas Petition. Dkt. 1. On that same date, Petitioner filed an application for stay of deportation or removal, Form I-246, with ICE. Dkt. 19 ¶ 27. ICE denied the application, and ERO attempted to serve Petitioner with a Notice of Imminent Removal at NWIPC, but he refused to sign it. Dkt. 19 ¶¶ 28, 29.

Further, as it relates to a travel document for Petitioner's removal to Laos, Respondents assert that on May 15, 2026, ERO became aware of the errors on Petitioner's travel document, and sent a request to HQ RIO to update the document. Dkt. 19 ¶ 21. On June 17, 2026, this Court denied Petitioner's first habeas Petition based on the Government's claim that an updated travel

---

[3] There are discrepancies as to the filing date of this amended motion. Exhibit B to the initial Petition in this case contains a cover letter from Petitioner's counsel dated "May 27, 2025," (Dkt. 2-2 at 2, Ex. B), with the amended motion itself dated "May 28, 2026," (Id. at 21). The amended motion has no file date stamp from the Eloy Immigration Court. Dkt. 2-2, Ex. B. However, the IJ's subsequent decision on Petitioner's motion states the amended motion was filed on June 1, 2026. Dkt. 18-3 at 5, Ex. C (IJ Decision & Order, July 15, 2026).

[4] Counsel was notified on August 15, 2026, that the BIA had rejected Petitioner's appeal because counsel had accidentally included the incorrect notice of appearance form for the immigration court. Dkt. 21 ¶ 2. However, counsel has since corrected this error and re-filed the appeal with a motion to accept a late filing, as instructed by the BIA. *Id.*

document for Petitioner would arrive "expeditiously." *Siackasorn*, 2026 WL 1745835, at *3, 5. However, no new travel document has been issued and Petitioner's current travel document expired on August 20, 2026. *Id*. ¶¶ 32–33. Respondents claim that, because they previously secured travel documents from Laos for Petitioner's removal, ICE believes it can obtain a corrected version. Dkt. 17 at 4; Dkt. 19 ¶ 33. Thus, at present, Respondents do not possess a valid travel document for Petitioner's removal to Laos.

Nevertheless, on August 31, 2026, while the Amended Petition and related filings remained under consideration by the Court, Respondents filed a Notice of Petitioner's Imminent Removal, informing the Court that "ICE has confirmed that it has the means and practical ability to effectuate Petitioner's removal." Dkt. 22. No evidentiary support was filed with this Notice, but Respondents claimed they would file such support by September 1, 2026. *Id*. Petitioner followed with an Emergency Motion for Temporary Restraining Order on September 1, 2026, requesting the Court prohibit Respondents from transferring Petitioner out of this District or remove him from the country while these proceedings are pending. Dkt. 24. The Court entered an Order on that same day provisionally granting Petitioner's request for the sole purpose of preserving its jurisdiction in light of Respondents' Notice of Imminent Removal. Dkt. 26.

Also on September 1, 2026, Respondents filed an unsworn declaration from a Detention and Deportation Officer in support of their Notice of Imminent Removal, which similarly states, "ICE is obtaining a renewed copy [of Petitioner's travel document] prior to the intended removal." Dkt. 25 ¶ 5 (Ramirez Decl.). Attached to the declaration is a Notice to Petitioner informing him of a new travel document, but a valid travel document itself is not also attached. *See* Dkt. 25-1.

//

## II. HABEAS STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III. DISCUSSION

Petitioner's Amended Petition seeks release from custody and asserts numerous counts. Dkt. 14. In Count One, Petitioner asks the Court to enjoin his removal on the basis that his final order of removal is no longer valid. Dkt. 14 at 36–37. In Count Two, Petitioner asks the Court to enjoin his removal until the BIA rules on his motions, or until he can file an appeal with the Ninth Circuit Court of Appeals. *Id*. at 37–39. In Count Three, Petitioner asserts a substantive due process claim against his re-detention on numerous grounds. *Id*. at 39–40. Specifically, Petitioner asserts additional arguments related to his state drug conviction; argues his removal is not reasonably foreseeable under *Zadvydas v. Davis*, 533 U.S. 678 (2001); and argues his re-detention did not comply with 8 C.F.R. § 241.13(i). Dkt. 14 at 39–40. In Count Four, Petitioner asserts a procedural due process claim against his re-detention under the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). In Count Five, Petitioner argues Respondents failed to comply with their regulations, namely 8 C.F.R. § 241.13(i), when they re-detained him. Dkt.

14 at 41–42. And in Count Six, Petitioner briefly asserts a "Punitive Banishment" claim under the Fifth and Eighth Amendments. *Id*. at 42–43.

**A. Removal Order and BIA Motion Claims**

In Counts One and Two, Petitioner requests this Court address both the validity of his final removal order and his pending motions before the BIA. *See* Dkt. 14 at 36–39. In their Return, Respondents maintain this Court lacks jurisdiction to consider these counts. Dkt. 17. Upon review, the Court agrees with Respondents.

The Immigration and Nationality Act ("INA") provides that "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory) . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

The Ninth Circuit has held § 1252(g) blocks claims similar to those asserted by Petitioner here, reasoning that "[n]o matter how [the petitioner] frames it, his challenge is to the Attorney General's exercise of his discretion to execute Matias's removal order, which we have no jurisdiction to review." *Rauda v. Jennings*, 55 F.4th 773, 776, 778 (9th Cir. 2022) (addressing both petitioner's challenge of his final removal order and his request "to enjoin the government from removing him until the BIA ruled on his motion to reopen and the court ruled on his habeas petition."); *see also Badran v. Lyons*, No. 8:26-cv-01145-SK, 2026 WL 1764911, at *2 (C.D. Cal. Jun. 11, 2026) ("each claim asks this court to find essentially that his removal order is invalid because the underlying conviction that formed the basis for removal has been vacated . . . . That is a challenge to the validity of a final removal order—a matter reserved for the Ninth Circuit, not federal habeas courts.").

The authorities Petitioner mainly relies upon in his briefing, *e.g., Vega-Anguiano v. Barr*, 982 F.3d 542 (9th Cir. 2019); *Lopez v. Garland*, 17 F.4th 1232 (9th Cir. 2021); *Arce v. United States*, 899 F.3d 796 (9th Cir. 2018);[5] and *Nken v. Holder*, 556 U.S. 418 (2009), are inapposite as each appears to address federal appellate courts' authority to review the BIA's adjudication of immigration matters, not a federal District Court's authority.

Further, Petitioner's claims under the Mandamus Act, 28 U.S.C. § 1361, or the Administrative Procedures Act ("APA"), also fail on this point as "there is no Mandamus Act [] exception to the jurisdiction-stripping effect of § 1252(g)," *Jian Wang v. Wolf*, 511 F. Supp. 3d 1060, 1068 (C.D. Cal. 2021), and § 1252(g) expressly applies "notwithstanding any other provision of law (statutory or nonstatutory) . . . ."

Moreover, Petitioner's "Punitive Banishment" claim in Count Six similarly fails on this point, in part due to the generalized nature of the arguments and authorities asserted therein, but also because it appears providing relief on the claim would ultimately cut to the validity of the removal order. *See* Dkt. 14 at 41–42.

In sum, this Court lacks authority to address Petitioner's claims relating to the validity of his removal order or pending BIA motions. Thus, Counts One and Two in the Amended Petition (Dkt. 14) are **DENIED**.

**B. Due Process and Regulatory Claims**

As stated above, Petitioner also asserts three claims related to his re-detention. Dkt. 14 at 39–42. The Court is able to address these claims as each asks the Court to assess Petitioner's re-detention, and not the validity of his removal order. *See Badran*, 2026 WL 1764911, at *2

[5] The Ninth Circuit in *Acre* addressed a District Court's dismissal of a Federal Tort Claims Act claim, not a District Court's direct review of a final removal order. 899 F.3d at 798–99.

("reviewable habeas petitions may challenge the lawfulness of detention on grounds independent of the removal order's validity—the length of detention, the absence of a bond hearing, the standards applied at one, and so forth."). Upon review, the Court concludes Petitioner's claim under *Zadvydas* that his removal is no longer foreseeable has merit, and will **GRANT** the Amended Petition on this basis.

1. <u>Indefinite Detention</u>

In Count Three, Petitioner challenges the constitutionality of his detention pursuant to 8 U.S.C. § 1231, which takes effect once a final order of removal has been entered by an immigration judge.

The first ninety-day period following the entry of a final removal order is known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). To ensure a noncitizen's presence for removal and to protect the community from dangerous noncitizens who are awaiting removal, the INA mandates detention during the removal period. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the [DHS Secretary] **shall** detain the [noncitizen].") (emphasis added). Once a ninety-day removal period has expired, as occurred in this case, detention of unremoved noncitizens is no longer mandatory; instead, continued detention is committed to the discretion of the DHS Secretary. 8 U.S.C. § 1231(a)(6).

There is no textual limit on the DHS Secretary's discretion to detain certain noncitizens beyond the initial ninety-day removal period. However, in *Zadvydas*, the Supreme Court interpreted the INA to authorize the detention of noncitizens subject to removal orders only for a period "reasonably necessary to secure [their] removal." 533 U.S. at 699. By interpreting the INA in this way, the Supreme Court avoided a "serious constitutional threat" posed by granting the discretionary authority to order noncitizens detained for indefinite durations. *Id.*

Under *Zadvydas*, an order of detention during the first six months after entry of a final removal order is presumptively reasonable. *Id.* at 701. After the presumptively reasonable 180-day window has elapsed, courts apply a burden-shifting framework to determine whether a noncitizen's detention is of an indefinite duration in violation of the INA and due process. *Id.*

Within this framework, the noncitizen carries the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The "good reason to believe" standard "does not place a burden upon the detainee to demonstrate [there is] no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that." *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (cleaned up). If the noncitizen provides good reason, the burden then shifts to the government to show removal remains likely within a reasonable timeframe. *Id*. If the government fails to submit sufficient rebuttal evidence showing that removal is likely to occur within the reasonably foreseeable future, then the noncitizen is entitled to habeas corpus relief. *Id.*

Here, Petitioner received a final order of removal on August 8, 2007. Although he was released on an OSUP in November 2007 after he had already been detained for three (3) months, he was re-detained on April 20, 2026, and has remained in detention at NWIPC since that date. The parties do not contest that Petitioner's detention has extended beyond the presumptively reasonable six-month period. Dkt. 14 at 2–3; Dkt. 17 at 5.

The Court finds Petitioner has shown that "there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, as Petitioner cannot be removed to Laos at this time because he does not currently possess travel documents for Laos. Nor does he hold a travel document for any other country.

The burden thus shifts to Respondents to "respond with evidence sufficient to rebut [Petitioner's] showing." *Zadvydas*, 533 U.S. at 701. Respondents have failed to do so. In their Return, Respondents state only that because ICE has previously secured travel documents, albeit inaccurate, for Petitioner's removal to Laos, "ICE believes it can obtain a corrected version." Dkt. 17 at 4. But these statements of aspiration alone do not automatically render Petitioner's removal "reasonably foreseeable." *See Zadvydas*, 533 U.S. at 701. In fact, Respondents have attempted on two occasions to obtain valid travel documents for Petitioner and failed on both counts. The errors in those documents, namely to Petitioner's name and date of birth, do not properly identify Petitioner and are therefore significant, as they could hinder Petitioner's future liberty based on his inability to correctly identify himself.

Moreover, the second erroneous travel document for Petitioner expired on August 20, 2026. *See* Dkt. 17 at 4. Despite Respondents' pronouncements in their Return such as "ICE believes it can obtain a corrected [travel document], (Dkt. 17 at 4), as of the date of their most recent Notice of Imminent Removal, Respondents have failed to properly notify the Court of any current valid travel document, (Dkt. 22 at 1).

Specifically, in a declaration filed in support of that latest Notice, Respondents declare that "ICE is obtaining a renewed copy [of Petitioner's travel document,] (Dkt. 25 ¶ 5), but do not attach any proof that such document exists. Dkt. 25. Without more, and in light of the previous failed attempts to obtain a travel document from Laos for Petitioner's removal, the Court is unwilling to accept an unsworn declaration from the Government that at some unidentified point in the future Petitioner may acquire a valid travel document and, therefore, his continued detention is authorized under *Zadvydas*.[6]

---

[6] Respondents cite *Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008) in support of their position that Petitioner has not established his removal is not reasonably foreseeable. *See* Dkt. 17 at 7. In *Prieto-Clark*, the petitioner argued

The Court is thus persuaded that there is no significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Petitioner's continued detention pending removal, as construed in *Zadvydas*, is no longer authorized and is unlawful.

Having determined that Petitioner's continued detention is no longer authorized, the Court must determine the proper scope of habeas relief. Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The Supreme Court in *Zadvydas* considered conditional release the appropriate remedy once detention exceeds the period reasonably necessary to effectuate removal. 533 U.S. at 699–700. Accordingly, the Court concludes that the appropriate relief in this case is Petitioner's immediate release from immigration detention under reasonable conditions of supervision, if any.

2. Re-detention Claims

In Counts Four and Five, Petitioner alleges his re-detention violates procedural and substantive due process. Dkt. 14 at 40–42. Because the injuries alleged in these Counts are remedied by the Court's grant of immediate release on Count Three and because disposition of additional constitutional claims would not materially alter the outcome of this case, the Court declines to reach Petitioner's re-detention claims in Counts Four and Five. *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (explaining that courts should avoid resolving

---

his detention was indefinite and removal was "unforeseeable" "because the government [could not] demonstrate to any degree of certainty when [his] judicial review [would] end." *Prieto-Romero*, 534 F.3d at 1063. The Ninth Circuit ultimately held that because the petitioner "foreseeably remains *capable* of being removed—even if it has not finally been determined that he *should* be removed—[ ] the government retains an interest in 'assuring [his] presence at removal.'" *Id*. at 1065 (quoting *Zadvydas*, 533 U.S. at 699) (emphasis in original). Here, because the Court finds Respondents have not demonstrated Petitioner "remains capable" of being removed, *Prieto-Clark* does not support Respondents' position.

a constitutional question "unless absolutely necessary to a decision of the case") (internal citations and quotations omitted).

Nevertheless, the Court recognizes that, in addition to immediate release, Petitioner also requests the Court order Respondents to provide Petitioner with a pre-deprivation hearing before any future re-detention or, in the alternative, provide written notice to the Petitioner before any future re-detention and to follow the processes of 8 C.F.R. § 241.13. Dkt. 14 at 40–42.

The Court concurs that Respondents must comport with due process should they re-detain Petitioner. *See, e.g.*, *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) ("[T]he fact that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."). However, the record does not contain sufficient argument or authority to establish that, in all circumstances preceding a future re-detention, the Due Process Clause would be violated in the absence of these specific procedures.

Therefore, the Court declines to prescribe a comprehensive procedural framework for any potential re-detention decision Petitioner may face.

## IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

(1) The Amended Petition (Dkt. 14) is **GRANTED IN PART**;

(2) Petitioner's Motion for Preliminary Injunction (Dkt. 15) and Motion for Temporary Restraining Order (Dkt. 24) are **DENIED as moot**;

(3) Respondents **SHALL** immediately release Petitioner Bounlay Siackasorn from custody under reasonable conditions of supervision, if any; and

(4) Respondents **SHALL** file a declaration with the Court within **twenty-four hours** of this Order, confirming that Petitioner has been released from immigration detention and providing the date and time of his release.

//

Finally, the Court will entertain any post-judgment motion for attorney’s fees, as requested in the Petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 28th day of September, 2026.

Grady J. Leupold
United States Magistrate Judge